**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Carlos Antonio Flores Miguel, | Case No.: 26-CV-469-SRN-EMB |
| Petitioner | |
| v. | **PETITIONER'S RESPONSE TO ECF NOS. 19—21-1** |
| Pamela Bondi, Attorney General; et al., | |
| Respondents. | |

Respondents filed additional documents in the late afternoon of March 1, 2026. The first filing is a four-paragraph document spanning 1.5 pages, seemingly attempting to provide as little information as possible. ECF No. 19. The second filing is a supplemental declaration of William J. Robinson, which parrots the first 5 paragraphs of his prior declaration, and then adds: "After reviewing DHS Databases on February 26, 2026, this Petitioner is not in the custody of the Department of Homeland Security. Databases do not currently indicate any active detainer from ERO." ECF No. 20.

Two exhibits are attached to the declaration, including a DHS Report of Investigation. *See* ECF No. 20-1. While the report is somewhat difficult to follow, despite being exceedingly brief, it, in combination with the other filings in this matter, seems to indicate that the following series of events occurred:

1.  Petitioner presented for an ICE check in on January 12, 2026, and agents equipped him with an ankle monitor, and gave him a new check in date of Apr. 9, 2026. ECF No. 11 ¶ 5.

1

2. Armed, masked, and then-unidentified immigration agents used unnecessary trickery to arrest Petitioner at his workplace during Operation Metro Surge despite the fact he had gone to a check in just 8 days earlier *and* been equipped with arguably illegal GPS-wearable technology not previously required under his order of supervision. *Accord, e.g.*, ECF No. 11 ¶¶ 5-7; ECF No. 1 ¶¶ 8-9, 14, 15; ECF No. 12 at 3-5.

3. It has been claimed by immigration agents that Petitioner assaulted immigration officers in the course of the arrest. *See* ECF No. 12. Petitioner disputes those allegations. *See* ECF No. 1 ¶ 9.

4. After Respondents arrested Petitioner, in a seemingly illegal manner, on January 20, 2026, Respondents took Petitioner to Fort Snelling, Minnesota and proceeded to subject him to a custodial interrogation without reading him his *Miranda* rights or otherwise informing him of his right to have counsel present. *See* ECF No. 1 ¶ 9.

5. After Petitioner told Respondents that he did not have any of the information they were asking about, Respondents informed Petitioner that they would be criminally charging Petitioner with assaulting a federal law enforcement officer. *Id.*

6. Within a few hours of being arrested, Petitioner had filed a habeas corpus petition while he was still in Minnesota. *See* ECF No. 1.

7. The next day, on January 21, 2026, Respondents inexplicably transported Petitioner from Minnesota to El Paso, Texas, depositing Petitioner into an

ICE-only detention facility located at Camp East Montana in El Paso, Texas. ECF No. 11 ¶ 8; ECF No. 20-2.

8. Also on January 21, 2026, the Court issued a briefing schedule ordering Respondents to respond to the habeas petition within 14 days. ECF No. 3.

9. Also on January 21, 2026, DHS publicly posted about their arrest of Petitioner, including the following photograph and description:

## DHS Arrests More Worst of Worst Including Gang Members, Rapists, Burglars, and Perpetrators of Fraud in Minnesota Yesterday

**Release Date:** January 21, 2026

WASHINGTON — The U.S. Department of Homeland Security (DHS) highlighted more worst of the worst criminal illegal aliens arrested in the sanctuary state of Minnesota yesterday during Operation Metro Surge, including gang members, rapists, burglars, and perpetrators of fraud.

*"Another day with worst of the worst arrested in Minnesota without the help of Governor Walz or Mayor Frey."* said **Assistant Secretary Tricia McLaughlin**. *"Some of yesterday's worst of worst criminals DHS arrested include gang members, rapists, burglars, and perpetrators of fraud. Since President Trump took office, DHS has arrested over 10,000 criminal illegal aliens in Minnesota. Our law enforcement officers are risking their lives to arrest these thugs—some RELEASED from Minnesota jails and are saving countless American lives by getting these criminals out of our country."*

Criminal illegal aliens arrested during Operation Metro Surge yesterday include:



Carlos Antonio Flores-Miguel, a criminal illegal alien from El Salvador, **MS-13 gang member and registered sex offender,** with a final order of removal from 2021. He has been deported four times and convicted for **illegal reentry** twice. He was RELEASED into the country by the Biden Administration in 2022. Flores-Miguel **violently resisted arrest, assaulting officers by punching, kicking, and attempted to grab the gun of a law enforcement officer.** He has previous arrest charges of **rape – strongarm and resisting an officer and was arrested in El Salvador for robbery.**

Available at: https://www.dhs.gov/news/2026/01/21/dhs-arrests-more-worst-worst-including-gang-members-rapists-burglars-and.

10.    On January 23, 2026, agents of the United States submitted a Criminal Complaint and Affidavit in Support to establish probable cause. *See* ECF No. 12. The documents were filed under seal. *Id.* The Complaint alleges violations of 18 U.S.C. § 1114. *Id.*

11.    On the same date, agents of the United States also submitted a petition to seal the criminal-related documents. *Id.* The petition claims that "Premature disclosure of the information could jeopardize the ongoing investigation into the alleged criminal offenses and potentially the privacy of individuals who may ultimately not be indicted." *Id.* The petition further stated that "Nondisclosure of the documents is necessary to prevent the ongoing investigation from being compromised and for the safety of officers conducting the investigation and who will be effecting the arrest of the defendant." *Id.* The petition goes on to list a parade of potential horribles if the request to seal is not granted. *Id.*

12.    The sealing petition further alleges that the "documents also contain identifying information of, and circumstances relating to, an individual or individuals allegedly involved in criminal activity in some way who may not be indicted in this case. Nondisclosure of the documents at this stage is also necessary to protect their identity and/or to minimize the substantial risk that revelation of details set forth in the documents could cause to their reputation." *Id.*

13.    The sealing petition was dated January 23, 2026. *Id.* The court granted the

government's petition to seal on the same date. *Id.* The sealing order remains in effect and has not yet elapsed. *Id.*

14. On January 23, 2026, the court also issued a sealed arrest warrant. *Id.* The signed warrant return indicates that the arresting officer received the warrant on January 23, 2026, and arrested Petitioner on January 26, 2026 in El Paso, Texas. *Id.*

15. Respondents have claimed, seemingly as a defense, that Petitioner "was released from ICE custody at the El Paso Camp East Montana Detention Facility in El Paso, TX on January 26, 2026 at approximately 1:15pm and turned over to the custody of the El Paso County Sheriff's Office by HSI El Paso on a federal warrant out of Minnesota." ECF No. 20 ¶ 5; *see also* ECF No. 8 ¶ 5.

16. On February 10, 2026, Respondents transferred Petitioner back to ICE detention at the West Texas Detention Facility in Sierra Blanca, Texas. ECF No. 11 ¶¶ 12-14.

17. As of February 28, 2026, Respondents are claiming that Petitioner is in the custody of the U.S. Marshals, but are mum as to Petitioner's actual whereabouts. *See* ECF Nos. 21, 21-1.

Under the totality of the circumstances, it appears that Respondents are acting in bad faith with respect to Petitioner. Respondents and their counsel appear to be lying under oath in sealed court filings. Petitioner will address the criminal issues in the proper forum rather than attempting to collaterally attack them here, but the fact that Respondents

publicized Petitioner's arrest on January 21, 2026 via a public national posting *with Petitioner's picture and full legal name* makes the United States' subsequent representations in their motion to seal, dated January 23, 2026, appear to constitute perjury, contempt, and bad faith. *See* 18 U.S.C. §§ 401, 1621.

Moreover, it appears that Respondents arrested Petitioner as part of an ICE operation to effect deportations, which is why they transferred him to an ICE-only detention facility as far away from family and counsel as possible. Respondents did not transfer Petitioner to the custody of the El Paso Sheriff's Office until after they realized that a habeas petition had been filed which was likely to be granted. *There was no conceivable good-faith reason for Respondents to transfer Petitioner to Texas if they legitimately intended to prosecute Petitioner in Minnesota for assaulting an officer.* To defeat the habeas petition, Respondents utilized perjury to obtain an arrest warrant. After obtaining the arrest warrant, Respondents refused to execute it until they could first transfer Petitioner from ICE detention to the detention authority of a Texas sheriff.

From the foregoing, it appears that Respondents asked the El Paso Sheriff to house Petitioner solely for the purpose of defeating the habeas petition. After Respondents filed a motion to dismiss and deportation officer affidavit claiming that the petition was moot because Petitioner was no longer in Respondents' custody, they promptly transferred him back to ICE custody on February 10, 2026. *See* ECF No. 11 ¶ 12. While Respondents appear to dispute that Petitioner is in ICE custody (*see* ECF No. 20 ¶¶ 6-7; ECF No. 21-1), they rely solely on databases that Respondents have exclusive control and access over – if Respondents do not want someone to appear in their database, they can accomplish that

goal by simply failing to update the database when they are supposed to. Much like the gang-databases that have fallen into disrepute, there is no reason for this Court to trust the accuracy of the databases Respondents rely upon now, especially considering Respondents' course of performance in this case thus far and in this State since December 2025. *Cf.*, *e.g.*, *Diaz Ortiz v. Garland*, 23 F.4th 1, 15-22 (1st Cir. 2022) ("the record clearly shows that the IJ and the BIA credited the gang package's 'verification' of Diaz Ortiz as a gang member in finding him not credible. However, the BRIC database does not contain "reasonable, substantial, and probative evidence" of gang membership or association, and the government provided no other evidence to substantiate the inferences and conclusions drawn from the police reports via the BRIC point system."); *Juan T.R. v. Noem*, No. 26-CV-00107-PJS-DLM, ECF Nos. 12, 12-1, 12-2 (D. Minn. Feb. 26, 2026) (Order and updated appendices from Chief Judge Schiltz collecting examples of Respondents' violations of court orders in this district). Rather, the Court should trust Petitioner's affidavit that stated he was transferred to the ICE-only West Texas Detention Facility in Sierra Blanca, Texas. ECF No. 11 ¶¶ 12-14.

Each filing Respondents submit creates a new series of questions and concerns. Something is amiss.

Even assuming *arguendo* that Petitioner is not in ICE custody at present because he is in USMS custody (or if he is in ICE custody presently but is transferred to USMS custody later), Petitioner respectfully objects to Respondents' request to dismiss the case as moot. The facts before the Court clearly present a situation where an exception to prudential mootness is applicable because the issues before the Court are capable of repetition, yet

evading review. *E.g.*, *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007); *Los Angeles* v. *Lyons*, 461 U.S. 95, 109 (1983); *Southern Pacific Terminal Co.* v. *ICC*, 219 U.S. 498, 515 (1911); *Spencer* v. *Kemna*, 523 U.S. 1, 17 (1998) (The exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.").

DATED: March 1, 2026                    Respectfully submitted,

                                                **RATKOWSKI LAW PLLC**

                                                /s/ *Nico Ratkowski*
Nico Ratkowski (Atty. No.: 0400413)
332 Minnesota Street, Suite W1610
Saint Paul, MN 55101
P: (651) 755-5150
E: nico@ratkowskilaw.com

*Attorney for Petitioner*