UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Carlos F.,<br><br>        Petitioner,<br><br>v.<br><br>Pamela Bondi, Attorney General; Kristi Noem, Secretary of Homeland Security; Todd M. Lyons, Acting Director of U.S. Immigration and Customs Enforcement; Marcos Charles, Acting Executive Associate Director for Enforcement and Removal Operations; Peter Berg, Field Office Director for Enforcement and Removal Operations; U.S. Immigration and Customs Enforcement; U.S. Department of Homeland Security; and John Doe, Local Detention Authority,<br><br>        Respondents. | No. 26-cv-0469 (SRN/EMB)<br><br><br>**ORDER** |

Nicholas Ratkowski, Ratkowski Law PLLC, 332 Minnesota St., Ste. W1610, Saint Paul, MN 55101, for Petitioner

Matthew Isihara and Joseph Teirab, U.S. Attorney's Office, 300 S. 4th St., Minneapolis, MN 55415, for Federal Respondents

SUSAN RICHARD NELSON, United States District Judge

      Pending before the Court is Petitioner Carlos F.'s Petition for Writ of Habeas Corpus (the "Petition") [Doc. No. 1]. On March 2, 2026, the Court held a hearing requiring counsel for Respondents to show cause why they should not be held in contempt of court.

1

(*See* Mar. 2, 2026 Minutes [Doc. No. 24].)  This Order addresses both the Petition and the question of contempt.

For the reasons set forth below, the Court denies without prejudice Carlos F.'s Petition, and declines to sanction Respondents.

I.   BACKGROUND

A.  **Arrest and Detention by ICE**

Carlos F. is a citizen of El Salvador who was ordered removed from the United States on May 26, 2022, and was concurrently denied withholding of removal under the Immigration and Nationality Act § 241(b)(3), withholding of removal under the Convention Against Torture, and deferral of removal under the Convention Against Torture ("DCAT").  (Pet. ¶¶ 1–2.)  The Board of Immigration Appeals sustained Carlos F.'s appeal, leaving the removal order in place, but remanded for further consideration of his DCAT application.  (*Id.* ¶ 4.)  On December 27, 2022, an Immigration Judge granted Carlos F.'s DCAT application, preventing his removal to El Salvador. (*Id.* ¶ 5.)  DHS did not appeal the final Immigration Court order, rendering it administratively final.  (*Id.*)  ICE had, and continues to have, no legal basis on which to detain Carlos F.

Upon Carlos F.'s release from immigration custody on December 29, 2022, he was placed on an Order of Supervision.  (*Id.* ¶ 6.)  Among his conditions of release, U.S. Immigration and Customs Enforcement ("ICE") required him to regularly check in with the agency from December 2022 through January 2026, and to provide ICE with updated contact information.  (*Id.* ¶¶ 7–8.)  Carlos F. attests that at a January 12, 2026 check-in

appointment, ICE placed an ankle monitor on him, and scheduled his next check-in date, April 9, 2026. (Carlos F. Decl. [Doc. No. 11] ¶ 5.)

On January 20, Carlos F. asserts that while he was at work, he received a call from an ICE agent telling him that the signal on the ankle monitor was not functioning properly. (*Id.* ¶¶ 6–7.) The agent instructed Carlos F. to exit his workplace—it was a ruse. (*Id.* ¶ 7.) Carlos F. contends that when he went outside, he was confronted by "many ICE agents" who "hit me and tackled me to the ground." (*Id.*)

On the day of his arrest, Carlos F. filed the instant Petition, seeking several forms of relief, including an order restraining Respondents from moving him out of state during the pendency of his Petition, and an order requiring his immediate release. (Pet. at 30–33.)

On January 21, 2026, Magistrate Judge Elsa Bullard issued an Order to Show Cause [Doc. No. 3] requiring Respondents to file an answer to the Petition, showing cause why the requested writ should not be granted. (OSC ¶ 1.) Magistrate Judge Bullard specified that the answer should include affidavits and exhibits necessary to establish the lawfulness and correct duration of Carlos F.'s detention and a reasoned memorandum of law explaining Respondents' legal position. (*Id.* ¶ 2(a),(b).)

Carlos F. asserts that after his arrest, ICE briefly held him in Minnesota before transporting him to Texas on January 21, 2026. (Carlos F. Decl. ¶ 9.) ICE agents unlawfully detained him at the Camp East Montana ICE detention facility in El Paso, Texas for approximately five days. (*Id.* ¶ 8.)

3

### B. Criminal Proceedings in the District of Minnesota

On January 23, 2026, the Government filed a criminal complaint against Carlos F. in the District of Minnesota, *see* 26-mj-0066 (EMB), under seal, and requested an arrest warrant. (*See* Second Robinson Decl., Ex. 1 [Doc. No. 20-1] at 2.) Department of Homeland Security ("DHS") special agents executed the arrest warrant at the El Paso ICE detention facility, and booked Carlos F. into the El Paso County Jail in El Paso, Texas, pending transfer to the District of Minnesota for criminal proceedings. (*Id.*)

On January 27, 2026, Carlos F. appeared in the U.S. District Court for the Western District of Texas at an initial appearance on the Minnesota charges. (Carlos F. Decl. ¶ 10.) He contends that the presiding judge informed him that he would be transferred to Minnesota. (*Id.*)

### C. Respondents' Motion to Dismiss or Transfer Venue, the Court's Denial of the Petition Without Prejudice for Lack of Jurisdiction, and the Court's Subsequent Granting of Petitioner's Motion for Reconsideration

On February 6, 2026, Respondents filed their response to the Petition, moving to dismiss or transfer venue [Doc. No. 6]. They acknowledged that Carlos F. was presently in criminal custody, and they sought dismissal of the Petition or, alternatively, requested transfer of the habeas case to the Western District of Texas, on the ground that this Court lacked personal jurisdiction. (Resp'ts' Mot. to Dismiss or Transfer at 1–2; Resp'ts' Mem. Supp. Dismissal or Transfer [Doc. No. 7] at 1–3.) Respondents supported their motion with the Declaration of William J. Robinson, Deportation Officer with U.S. Immigration and Customs Enforcement ("USCIS"). Mr. Robinson stated that Carlos F. was released

4

from ICE custody on January 26, 2026, and transferred to the custody of the El Paso County Sheriff's Office. (First Robinson Decl. [Doc. No. 8] ¶ 5.)

On February 12, 2026, the Court found that in light of the pending criminal proceedings and the fact that Carlos F. was no longer in Respondents' physical custody, habeas relief from his immigration detention was no longer needed. (Feb. 12, 2026 Order [Doc. No. 9] at 2.) Accordingly, the Court denied Carlos F.'s Petition without prejudice and denied as moot Respondents' Motion to Dismiss or Transfer. (*Id.*)

On February 16, 2026, Carlos F. filed a Motion for Reconsideration [Doc. No. 10], along with his Declaration. In his Declaration, he stated that although he was temporarily in the El Paso County Sheriff's Office's custody from January 26 through February 10, 2026, he was returned to ICE custody on February 10, 2026, and was being held at the West Texas Detention Facility in Sierra Blanca, Texas. (Carlos F. Decl. ¶ 12.) He therefore sought reconsideration of the Court's February 12, 2026 Order, arguing that it was based on Respondents' erroneous representations. (Pet'r's Mot. for Reconsid. at 3.)

The Court found that compelling circumstances warranted reconsideration, and granted Petitioner's motion. (Feb. 17, 2026 Order [Doc. No. 13] at 3–4.) The Court ordered Respondents to respond to Carlos F.'s Declaration no later than February 22, 2026, with reliable evidence concerning whether he was in ICE or criminal custody, where he was currently detained, and if not in Minnesota, when he would be transported back to Minnesota. (*Id.* at 3.) Furthermore, the Court required that Respondents' memorandum be supported by exhibits, as a sworn declaration alone would be insufficient. (*Id.*)

5

## D. Respondents' Noncompliance with the February 17 Order

Respondents failed to respond. On February 25, 2026—three days after the deadline for Respondents' response—the Court issued an Order to Show Cause ("OSC for Contempt") [Doc. No. 14]. In the OSC for Contempt, the Court ordered Respondents to file a response no later than 5:00 p.m. on February 27, 2026, showing cause why they should not be held in contempt of Court for failing to comply with the Court's February 17, 2026 Order. (OSC for Contempt at 2.) The Court also scheduled a contempt hearing to be held on March 2, 2026. (*Id.*)

At 5:45 p.m. on February 25, 2026, Respondents filed a "Status Report and Request for Extension of Deadline" [Doc. No. 15]. In the Status Report, Matthew Isihara, counsel for Respondents, asked the Court to "consider a declaration which we are currently preparing with the assistance of ICE." (Resp'ts' Status Report & Extension Request at 1.) Mr. Isihara further stated that the declaration "will be available by the 27th" and would include evidence substantiating that Petitioner was not in ICE custody. (*Id.*) In advance of the declaration, Mr. Isihara attached a DHS detention record and arrest warrant from the District of Minnesota. (*Id.*) The DHS detention record was heavily redacted and failed to shed any light on where Carlos F. was currently detained. (*Id.* at 3.) Likewise, the arrest warrant, which was issued in the sealed criminal case, did not address Carlos F.'s whereabouts or rebut his declaration concerning his custody.

Contrary to Mr. Isihara's representations, Respondents filed no sworn declaration on February 27, 2026. Rather, Respondents filed "Federal Respondents' Response to Show Cause Order," docketed as a "Notice," in which Respondents explained that their delay

6

"was not deliberate and d[id] not affect the underlying issue of whether Petitioner is still in ICE custody." (Resp'ts' Response to OSC [Doc. No. 16] at 2.) Respondents further represented that "there is no detainer that will require Petitioner to be returned to the custody of the Department of Homeland Security following the conclusion of his criminal matter." (*Id.* at 1.) Respondents focused on the law concerning civil contempt, arguing that contempt sanctions were not warranted and that the Petition should be dismissed as moot. (*Id.* at 2–3.)

Petitioner responded to Respondents' February 25 and 27, 2026 filings, characterizing them as insufficient to resolve the identity of the entity that detained him. (Pet'r's Response [Doc. No. 17] at 1–4.) He asserted that his efforts to obtain a decision on the merits of his Petition had been thwarted by "Respondents' refusal to comply with the Court's orders[.]" (*Id.* at 4.)

In a February 28, 2026 Order, the Court found that Mr. Isihara had failed to comply with both the February 17, 2026 Order and the OSC for Contempt. (Feb. 28, 2026 Order [Doc. No. 18] at 3–4.) In the absence of compliance—in the form of a sworn declaration and exhibits confirming that Petitioner was in criminal custody—the Court ordered that the contempt hearing would proceed. (*Id.* at 3.)

On March 1, 2026, Respondents filed a series of documents, all docketed inexplicably as "Notice[s]." In Respondents' Supplemental Response to the OSC for Contempt [Doc. No. 19], they referred to two declarations and exhibits that purportedly demonstrated that Petitioner was in criminal pretrial custody, awaiting transport to Minnesota.

7

In the Second Declaration of William J. Robinson [Doc. No. 20], Deportation Officer Robinson submitted essentially the same statements as set forth in his previous declaration, but added two items of note. First, he stated that "[a]fter reviewing DHS Databases on February 26, 2026, this Petitioner is not in the custody of the Department of Homeland Security." (Second Robinson Decl. ¶ 6.) Second, he stated that "Databases do not currently indicate any active detainer from [U.S. Enforcement and Removal Operations]." (*Id.* ¶ 7.) One of the two exhibits attached to his declaration was a DHS Homeland Security Investigations' Report of Investigation ("Report") [Doc. No. 20-1]. The Report confirmed that agents executed the Minnesota arrest warrant on January 26, 2026 in Texas, that Carlos F. was booked into the El Paso County Jail, and that he would be transferred to Minnesota after initial criminal proceedings in the Western District of Texas. (Report at 2.) The Report further noted that Carlos F. waived an identity hearing in the Western District of Texas, and concluded, "The case is now closed." (*Id.*)

Respondents also submitted the Declaration of Matthew Isihara [Doc. No. 21]. In his declaration, Mr. Isihara stated that a person from the U.S. Attorney's Office for the District of Minnesota contacted the U.S. Marshals Service by email on February 28, 2026, requesting information concerning the current location and custody status of Petitioner. (Isihara Decl. ¶ 3.) Mr. Isihara was copied on the email communication, which he attached as an exhibit to his declaration. (*Id.*) The representative from the U.S. Marshals Service stated that Carlos F. was listed in "USMS W/TX-El Paso custody waiting movement back to D/MN." (*Id.*; Isihara Decl., Ex. A [Doc. No. 21-1].)

8

Petitioner responded to Respondents' March 1, 2026 filings, asserting that Respondents' representations could not be trusted. Petitioner noted that on January 21, 2026, DHS publicly posted information on the DHS.gov website about Petitioner's arrest, including his photograph and referring to him as among the "Worst of the Worst," and stated that he had "violently resisted arrest, assaulting officers by punching, kicking, and attempted to grab the gun of a law enforcement officer." (Pet'r's Resp. [Doc. No. 22] at 3.) It is shocking to this Court that DHS apparently publicly posted this information on January 21, 2026—two days *before* the Government filed the criminal complaint and supporting affidavit *under seal* in 26-mj-66 (EMB). (Pet'r's Resp. at 3–4) (emphasis added).

Petitioner further accused Respondents of acting in bad faith and failing to confirm his actual whereabouts. (*Id.* at 5.) He contends that there was no legitimate reason for Respondents to transfer him to Texas if they intended to prosecute him in Minnesota. (*Id.* at 5–8.) Further, to the extent he is not in ICE custody, he objected to Respondents' request to dismiss his Petition as moot, as his petition presents issues that are capable of repetition. (*Id.* at 7–8.)

### E.  Contempt Hearing and Follow-Up

On March 2, 2026, the Court held the contempt hearing. Mr. Isihara and Joseph Teirab, also with the U.S. Attorney's Office, appeared for Respondents, and Nicholas Ratkowski appeared for Petitioner. Mr. Isihara admitted under oath that he took no steps to respond to the February 17, 2026 Order until the Court issued its OSC for Contempt on February 25, 2026. Although his Declaration did not mention it, Mr. Isihara testified that

9

on February 25 and 26, 2026, he unsuccessfully attempted to obtain information concerning Carlos F.'s whereabouts through a detainee database and from a liaison with DHS's Office of the Principal Legal Advisor ("OPLA"). On February 27, Mr. Isihara contacted the U.S. Marshals Service and sent an email to the mass mailbox for OPLA. He asked for evidence showing that Carlos F. had been transferred from ICE custody to the custody of the U.S. Marshals Service.

At the hearing, unable to confirm whether Carlos F. was in ICE or criminal custody at the West Texas Regional Detention Facility in Sierra Blanca, Texas, Mr. Teirab agreed to contact the facility and explain to them that he was under court order to determine if Carlos F.'s detention there was pursuant to a criminal warrant.

Later that day, Mr. Teirab filed a Status Update [Doc. No. 23]. Mr. Teirab states that he phoned the West Texas Regional Detention Facility and learned that Carlos F. is currently detained there under the custody of the U.S. Marshals Service, that currently, the facility exclusively detains individuals under the custody of the U.S. Marshals Service, and that the facility has not detained individuals under the custody of ICE for approximately five years. (Status Update at 1.) Mr. Teirab attached to his Status Report a March 2, 2026 email from a representative of the U.S. Marshals Service, indicating that Carlos F. is awaiting transport to Minnesota, but because of a measles outbreak at the detention facility in Texas, the Marshals Service cannot initiate transport at this time. (Status Update, Ex. 1 [Doc. No. 23-1].) The Marshals Service anticipates that it will transport Carlos F. to Minnesota "sometime in March." (*Id.*)

## II.     DISCUSSION

After these unnecessarily protracted proceedings to determine Carlos F.'s whereabouts and in whose custody he has been held, through the inaction of the Respondents and their failure to comply with multiple court orders, the Government finally confirmed that he had been held in pretrial criminal custody, not ICE custody, since approximately January 26 or 27, 2026 to the present.  Accordingly, Respondents have cured their noncompliance with the Court's orders and the Court will not issue contempt sanctions.  However, this pattern of noncompliance by the U.S. Attorney's Office cannot continue and will not be tolerated in the future.

Because Carlos F. is no longer in Respondents' custody, habeas relief from immigration detention is no longer necessary.  Moreover, in the criminal case, 26-mj-0066 (EMB), more than 30 days elapsed from the time of the filing of the criminal complaint and Carlos F.'s arrest, and the Government failed to file an information or indictment in that time, as required by the Speedy Trial Act, 18 U.S.C. § 3161(b).  On March 3, 2026, the Government moved to dismiss the criminal case under Federal Rule of Civil Procedure 48.  (26-mj-0066 (EMB) at Doc. No. 11.)  Magistrate Judge Bullard dismissed it under 18 U.S.C. § 3161(b), denied the Government's motion as moot, and ordered that Carlos F. be released from custody.  (26-mj-0066 (EMB) at Doc. No. 13.)  In this habeas action, Respondents have represented that there is no detainer requiring Carlos F. to be released to ICE custody. (Resp'ts' Response to OSC at 2.)  He must therefore be released, as Magistrate Judge Bullard has ordered.

11

In conclusion, across agencies, the Government's conduct with respect to Petitioner has been deeply troubling. ICE agents lured Petitioner outside of his workplace, engaged in assaultive conduct, and sent him to Texas with no legal basis, as he maintains DCAT status that prohibits his removal. In advance of a criminal complaint or indictment against Petitioner, DHS publicly announced his "arrest" on its website, labeled him among the "Worst of the Worst," published his photograph, and accused him of assaulting law enforcement officers—all at a time when no criminal charges had been filed. Two days later, the U.S. Attorney's Office brought criminal charges against Petitioner, under seal, chose not to pursue those charges, and ultimately moved to dismiss them. The Court has now dismissed the criminal charges. Petitioner's counsel attempted to determine whether his client was in criminal custody or immigration custody—and had great difficulty communicating with him—while counsel for Respondents failed, over many days, to properly respond to Court orders aimed at resolving the custody question. All the while, Petitioner remained in out-of-state detention, far removed from his family, friends, and legal counsel in Minnesota, unable to work, and unnecessarily exposed to a measles outbreak. The Government could have avoided this Orwellian scenario altogether or released Petitioner at various points in time, but failed to do so. Instead, Petitioner spent six weeks in detention, and a contempt hearing was required to resolve this matter. None of this should have occurred.

### III. ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Petitioner Carlos F.'s Petition for Writ of Habeas Corpus [Doc. No 1] is **DENIED WITHOUT PREJUDICE**; and

2. The Court declines to issue contempt sanctions against Respondents.


Dated: March 4, 2026                          s/Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge