UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 0:26-cv-00469-SRN-EMB

CARLOS ANTONIO FLORES MIGUEL,

    Petitioner,

v.

PAMELA BONDI, *et al.*,

    Respondents.

**FEDERAL RESPONDENTS' RESPONSE TO VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner filed this habeas petition to seek release from detention by the U.S. Immigration and Customs Enforcement ("ICE"). The Respondents (collectively the "United States") hereby file this Response requesting denial of the habeas Petition. **Petitioner is not entitled to release from detention**. 8 U.S.C. § 1231 applies to these circumstances, and provides that when an alien is ordered removed," the Secretary of Homeland Security "**shall** detain the alien" "[d]uring the removal period.". Petitioner was detained on January 20, 2026, or 49 days ago from today. The statutory removal period under the statute is 90 days. Petitioner's detention, thus, falls within the 90-day mandatory detention period, and it would be inappropriate to release Petitioner under 8 U.S.C. § 1231, given the presence of a final order of removal, which is attached. Petitioner filed this habeas

petition on January 20, 2026. Filed as supporting documents are, I-213, I-205 (warrant), I-871, and I-294.[1]

## BACKGROUND

The Federal Respondents draw the following background from information included in the Petition ("Pet."). We rehash the facts of the case here for the Court's reference: Flores Miguel is a citizen of El Salvador who was ordered removed from the United States on May 26, 2022 and was concurrently denied withholding of removal under the Immigration and Nationality Act § 241(b)(3), withholding of removal under the Convention Against Torture, and deferral of removal under the Convention Against Torture as it pertains to El Salvador. Pet. ¶ 2. In June 10, 2022, Flores Miguel appealed to the Board of Immigration Appeals ("BIA"). Pet. ¶ 3. On December 27, 2022, the immigration judge granted Flores Miguel's DCAT application, preventing his removal to El Salvador. Pet. ¶ 5. Flores Miguel was arrested on January 20, 2026. Following this, he was transported to Texas, where he was turned over the USMS custody on a Warrant out of Minnesota. The criminal case against Petitioner was subsequently dismissed, and on March 5, 2026, the Department of Homeland Security took out a warrant against him, reinstating his previous removal order. Based on Agency Records, Petitioner was booked

---

[1] Regrettably, we intended to provide a supporting Declaration but were unable to procure one by the filing deadline. We will provide it to the Court as soon as it is available from Agency.

into the detention facility in El Paso at 6 PM on March 5th, 2026. On March 6th, 2026, Respondents' Counsel became aware of Petitioner's renewed detention by the Agency, and following discussion with Opposing Counsel, filed a Motion to Reopen case and Set Briefing Schedule on 3/8 given these new developments.

## ARGUMENT

I.   **Detention of Petitioner Under 8 U.S.C. § 1231**

The Court should deny this petition on the merits. Petitioner is not entitled to release from detention. 8 U.S.C. § 1231 applies to these circumstances, and provides that when an alien is ordered removed," the Secretary of Homeland Security "shall detain the alien" "[d]uring the removal period.". Petitioner has been detained since January 20, 2026, 49 days ago.[2] We are still within the mandatory detention period under 8 U.S.C. § 1231.

II.  **Legal and Statutory Authority for Detention Pending Removal**

ICE has the authority to detain Petitioner pending his removal from the United States. For more than two centuries, immigration officials have had the authority to charge noncitizens as removable from the country, arrest noncitizens subject to removal, and detain

3

noncitizens during removal proceedings. *See Abel v. United States*, 362 U.S. 217, 233 (1960). Through the Immigration and Nationality Act ("INA"), Congress enacted a multi-layered statutory scheme for the civil detention of noncitizens pending a decision on removal, during the administrative and judicial review of removal orders, and in preparation for removal. *See* 8 U.S.C. §§ 1225, 1226, and 1231. Once a noncitizen is subject to a final removal order—as Petitioner is here—his detention is governed by 8 U.S.C. § 1231 and its implementing regulations at 8 C.F.R. part 241.

A noncitizen who has been ordered removed lacks a legal right to remain in the United States, and his liberty interest in remaining in the country is reduced. Accordingly, federal law provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" and "shall detain the alien" during the removal period. 8 U.S.C. § 1231(a)(1)(A) and (a)(2)(A).[3] The "removal period" is the period during which the Department of Homeland Security begins to take steps to execute the noncitizen's final removal order. *See id.* § 1231(a)(1)(A)-(B). That period begins on the latest of: (1) the "date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id.* § 1231(a)(1)(B)(i)-(iii).

---

[3] The Homeland Security Act of 2002 transferred many immigration enforcement and administrative functions from the Attorney General to the Secretary of Homeland Security. *See* Pub. L. No. 107-296, 116 Stat. 2135 (2002).

Detention during the 90-day removal period can be extended in some circumstances. For example, noncitizens who are removable after being convicted of an aggravated felony may be detained beyond 90 days. *Id.* § 1231(a)(6); *see also id.* § 1231(a)(1)(C) (suspension of removal period when noncitizen fails to make timely application for travel documents or acts to prevent removal). The Department of Homeland Security also conducts periodic post-order custody reviews to determine whether a noncitizen subject to a final removal order should continue to be detained beyond the removal period. *See* 8 C.F.R. § 241.4 (addressing continued detention for inadmissible, criminal, and other noncitizens).

After the removal period expires, a noncitizen may be released under an order of supervision. *See* 8 C.F.R. § 241.13. Specifically, a noncitizen held beyond the removal period can seek release from custody by showing that "there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." *Id.* § 241.13(a). However, the Department of Homeland Security can revoke release "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). The procedures for revocation are set out in a federal regulation, which requires that the noncitizen:

> be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future . . . . The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

5

*Id.* § 241.13(i)(3). After a noncitizen is re-detained using these procedures, § 241.4 governs his continued detention pending removal. *Id.* § 241.13(i)(2). While Petitioner correctly notes that he is under DCAT protection, such protection only applies to the identified country, in this case El Salvador. There is nothing preventing ICE from removing him to a third country, if the Court elects to deny this Petition.

### III.    Petitioner's Zadvydas Challenge

Petitioner contends that his continued detention violates the Due Process Clause. This is better known as a *Zadvydas* challenge. Although the plain language of § 1231(a)(6) does not impose any limit on how long a noncitizen can be detained pending removal, the Supreme Court in *Zadvydas* "read an implicit limitation into" the statute. 533 U.S. at 689. Thus, a person subject to a final order of removal cannot be detained indefinitely. *Id.* at 699-700. *Zadvydas* established a temporal marker: detention for six months or less is presumptively constitutional. *Id.* at 701. But continued detention does not automatically become unconstitutional after six months; longer detention still comports with due process if there is a "significant likelihood of removal in the reasonably foreseeable future." *Id.* As the Supreme Court explained:

> [a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement

6

grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.*

*Id.* (emphasis added). The end result is that a habeas petitioner must meet the initial burden of demonstrating no significant likelihood of his removal in the reasonably foreseeable future. *Id.* If he makes this showing, then the government must rebut it. *Id.*

Furthermore, Petitioner's *Zadvydas* challenge is premature. As noted above, the Supreme Court holds that six months of detention is reasonable and constitutional when ICE is carrying out a removal order. Right away, that rule creates a problem for Petitioner because he has been detained for only a little over a month after being initially detained in Minnesota.[4] Thus, Petitioner's current detention is presumptively constitutional because it has not lasted more than six months; it has barely lasted two. Petitioner's failure to confront this issue and properly support his petition is reason enough to reject his request for habeas relief as premature. "[D]etainees awaiting removal from the United States may not file anticipatory habeas petitions prior to the six-month period having elapsed just in case their detention goes on for too long; instead, they must wait until the presumptively reasonable six-month period has passed to seek habeas relief." Brian B. v. Tollefson, 2024 U.S. Dist.

---

[4] Given the Petitioner's recent re-arrest in Texas after being released from USMS custody, he has been in ICE detention for 5 days, from the period he was notified of the Intent to Reinstate his Prior Order of Removal (Form I-871).

7

LEXIS 158854, at *4 (D. Minn. July 26, 2024), adopted by 2024 U.S. Dist. LEXIS 157487 (D. Minn. Sep. 3, 2024); see also Mehighlovesky v. U.S. Dep't of Homeland Sec., 2012 U.S. Dist. LEXIS 185286, at *6 (D. Minn. Dec. 7, 2012) ("A petition filed before the expiration date of the presumptively reasonable six months of detention prescribed by Zadvydas is properly dismissed as premature." (citations, alterations, and internal quotation marks omitted)). Indeed, earlier this year, this Court denied a Zadvydas petition as premature where the petitioner had been held for three months in 2009 and then a few weeks in December 2025. See Saengnakhone S. v. Noem, No. 25-cv-4775-ECT-LIB, ECF No. 10, at 8 (filed Jan. 6, 2026) ("To the extent he raises a Zadvydas challenge, it is premature, as Saengnakhone was detained only a few days past the 90-day removal period in 2009 and has been detained for only a few weeks since his December 2025 arrest."). The Court should likewise deny Petitioner's habeas petition on this basis.

To rebut the aforementioned presumption of constitutionality established in *Zadvydas*, a petitioner must show that there is no significant likelihood of their removal in the reasonably foreseeable future. See *Marquez-Amaya v. Thompson*, No. 25-cv-1501 (JKP), 2025 WL 3654327, at *4 (W.D. Tex. Dec. 15, 2025). "In practical terms, before the six-month period elapses, the government bears no burden to justify detention, and the petitioner must claim and prove, that his removal is not reasonably foreseeable." Id. (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D.N.J. 2025)). The petitioner bears the burden to rebut the presumption. *Marquez-Amaya*, 2025 WL 3654327, at *4; Cruz Medina v. Noem, 794 F. Supp. 3d 365, 379 (D. Md. 2025). In the present case, Petitioner fails to offer any actual evidence demonstrating that there is no significant

8

likelihood of his removal in the reasonably foreseeable future. Moreover, the fact is, that Petitioner is still well within the 90-day mandatory detention period under 8 U.S.C. 1231.

## IV. Petitioner's Procedural Challenge

Petitioner also asserts procedural challenges to his re-detention. For example, he asserts that ICE never gave him adequate notice of the reasons for revoking his release, and did not indicate that he had failed to comply with the terms of his Order of Supervision. Pet. ¶ 53. These allegations are immediately out of place in a habeas action because Petitioner does not tie them to the appropriate habeas remedy: release from custody. If the Court concludes that ICE's re-detention procedures were deficient, then the solution is for the agency to redo the process and correct any deficiencies—not release Petitioner from detention outright. Because none of the procedural issues listed in the petition would require Petitioner's release from custody, the Court should not grant him habeas relief as to any of those challenges.

Setting aside the mismatch between procedural claims and habeas remedies, Petitioner challenges lack merit for several reasons. First, he overlooks that nothing in § 1231 "shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers." 8 U.S.C. § 1231(h). Petitioner is trying to obtain habeas relief by asserting rights to procedural steps that he simply does not enjoy.

9

## CONCLUSION

The Federal Respondents respectfully request that the Court deny Petitioner's habeas petition in its entirety. No evidentiary hearing is necessary in this matter because the submissions filed with this response provide a sufficient record upon which the Court can adjudicate the petition. Petitioner is properly detained under 8 U.S.C. § 1231, as the Petitioner is subject to an already existing order of removal, the 90-day removal period is still ongoing (assuming arguendo that the Court elects to view this period as the beginning of his "mandatory detention" as his January 20 arrest date, in Minnesota), his Zadvydas challenge is premature, and the Petitioners have failed to meet their burden that there is no significant likelihood of removal. Bottom line, his detention is mandatory and should be upheld to facilitate his imminent deportation. Respondents Counsel thanks the Court for its willingness to consider our filing here.

Dated: March 10, 2026

                                                DANIEL N. ROSEN
                                                United States Attorney

                                                *s/ Matt Isihara*

                                                BY:  MATTHEW F. ISIHARA
                                                Assistant United States Attorney
                                                Attorney ID Number 422257 (GA)
                                                600 U.S. Courthouse
                                                300 South Fourth Street
                                                Minneapolis, MN  55415
                                                (781) 733-2860
                                                Matthew.Isihara@usdoj.gov