UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Carlos F., | Case No.: 0:26-CV-00469-SRN-EMB |
| Petitioner | **PETITIONER'S REPLY TO RESPONDENTS' RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| Pamela Bondi, Attorney General; et al., | |
| Respondents. | **EXPEDITED HANDLING REQUESTED** |

**PROCEDURAL & FACTUAL HISTORY**

Petitioner incorporates by reference the facts alleged in his verified habeas corpus petition, affidavit, and in this Court's orders. *See* ECF Nos. 1, 10-11, 13, 18, 25, 28.

Additionally, Respondents have provided a declaration from Deportation Officer ("DO") Angela Minner. ECF No. 30. DO Minner does not dispute the claim that the OOS issued pursuant to 8 C.F.R. § 241.13(i) after determining there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future. *See* ECF No. 30; Fed. R. Civ. P. 8(b)(6).

DO Minner admits that there are presently systemic barriers to deporting Petitioner to a third country in the reasonably foreseeable future. *See* ECF No. 30, ¶ 21 (acknowledging the present third-country removal injunction from the *D.V.D.* class action case).

DO Minner does not claim or insinuate that she nor any of the Respondents harbor any subjectively genuine or objectively reasonable belief that there exists any significant

likelihood of Petitioner's removal to any country in the reasonably foreseeable future. *See id.* While DO Minner casually suggests that maybe Mexico will accept Petitioner, DO Minner ignores the fact that on January 21, 2026, Respondents published a photograph of Petitioner online on the official DHS website claiming that Petitioner is one of the worst criminal aliens in the United States. DO Minner makes no attempt to explain why Mexico would agree to accept a Salvadoran national who the United States has characterized in such a manner, especially considering Petitioner's significant criminal history. DO Minner also makes no attempt to explain how the United States would ensure that Mexico does not simply turn around and deport Petitioner back to El Salvador in plain contravention of the DCAT grant provided to Petitioner by a United States immigration judge.

Perhaps most importantly of all, Minner does not identify any changed circumstances that existed at the time of the revocation decision, or which exist now, regarding the previous finding of no significant likelihood of removal in the reasonably foreseeable future.

Minner's declaration is wholly insufficient to meet Respondents' burden of establishing that changed circumstances existed at time of arrest, or otherwise exist now, regarding the prior determination that there is no significant likelihood of removal in the reasonably foreseeable future for purposes of revoking Petitioner's OOS under 8 C.F.R. § 241.13(i)(2)-(3). If anything, the declaration confirms that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future and that his detention occurred unlawfully and in violation of his regulatory *pre*-deprivation due process rights.

# ARGUMENT

**I.      Petitioner's detention is unlawful under regulation and *Zadvydas*.**

Respondents seem to imply that the only law governing the legality of their re-detention of Petitioner is the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See* ECF No. 29. This ignores the vast majority of Petitioner's habeas corpus pleadings, and ignores that the complained-of regulatory violations are independent due process violations that support the requested remedy of immediate release regardless of Petitioner's length of confinement. Respondents apparently fail to understand that it is the government who bears the initial burden of establishing that re-detention was lawful under 8 C.F.R. § 241.13(i)(2)-(3) and *Zadvydas*.

Section 241.13(i)(2) provides, in pertinent part:

> **Revocation for removal.** The Service may revoke an alien's release under this section and return the alien to custody **if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.**

8 C.F.R. § 241.13(i)(2) (emphasis added). Additionally, § 241.13(i)(3) provides:

> **Revocation procedures. Upon** revocation, the alien **will** be notified of the reasons for revocation of his or her release. The Service **will** conduct an initial informal interview **promptly** after his or her return to Service custody **to afford the alien an opportunity to respond** to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review **will** include an evaluation of any contested facts relevant to the revocation **and a determination** whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3) (emphasis added). The "determination" must be a "written

3

decision based on the administrative record, including any documentation provided by the alien, regarding the likelihood of removal and whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future" and must be "provide[d]… to the alien with a copy to counsel of record." 8 C.F.R. § 241.13(g).

Myriad courts, including this one, have repeatedly held that violations of 8 C.F.R. § 241.13(i) are independent due process violations that require immediate release. *Accord, e.g.*, *Yee S. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2879479, at *6 (D. Minn. Oct. 9, 2025) (ordering release because Petitioner has shown that ICE's re-detention of him . . . violated the law because ICE did not comply with its own regulations under section 241.13(i)(2)"); *Hernandez Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("The[] regulations clearly indicate, upon revocation of supervised release, it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed."); *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) ("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future."); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner was likely to succeed on unlawful redetention claim because "there is no indication that an informal interview was provided"); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387-88 (D. Mass. 2017) (holding that ICE's failures to follow regulatory revocation procedures rendered detention unlawful); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) ("because ICE did not

4

follow its own regulations in deciding to redetain [the petitioner], his due process rights were violated, and he is entitled to release"); *Phan v. Noem*, No. 25-CV-2422-RBM-MSB, 2025 WL 2898977, at *5 (S.D. Cal. Oct. 10, 2025) ("**The Court's research indicates that every district court, except one, to consider the issue has 'determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered**.'") (emphasis added; footnote and citations omitted); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (agencies are required to follow their own regulations); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."); *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *8-9 (S.D. Tex. Oct. 16, 2025); *Phong Van Do v. Bondi*, No. 4:25-CV-05643, ECF No. 10 (Slip Op.) (S.D. Tex. Dec. 18, 2025); *Bon Van Nguyen v. Bondi*, No. 4:25-CV-05827, ECF No. 11 (Slip Op.) (S.D. Tex. Dec. 19, 2025); *Dang Pham v. Bondi*, No. 4:25-CV-05765-H, ECF No. 12 (Slip Op.) (S.D. Tex. Jan. 9, 2026); *Sang Minh Tran v. Bondi*, No. 4:26-CV-00192, ECF No. 9 (Slip Op.) (S.D. Tex. Jan. 30, 2026).

Illustratively, in *Roble v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2443453 (D. Minn. Aug. 25, 2025), Judge Provinzino held:

> Besides merely parroting the regulatory text governing re-detention, ICE's notice to Roble provides zero reasons as to *what* changed circumstances exist such that Roble's removal is now significantly likely in the reasonably foreseeable future. … Rather, the notice summarily asserts that changed circumstances render Roble's removal from the U.S. significantly likely in the reasonably foreseeable future. … That language is not individualized to Roble; in fact, it applies to *any* noncitizen detained under 8 C.F.R. §

> 241.13(i)(2), since the notice simply mirrors the legal standard applicable to detaining a noncitizen released on an Order of Supervision. Providing a notice that simply recites the language of the regulation does not satisfy the Government's obligation to provide the 'reasons' why Roble's Order of Supervision was revoked.

*Roble*, 2025 WL 2443453, at *3 (alterations as original) (citing 8 C.F.R. § 241.13(i)(3); *Sarail A. v. Bondi*, No. 25-CV-2144 (ECT/JFD), ECF No. 9 at 5 (R&R) (D. Minn. June 17, 2025) (recommending habeas relief when ICE similarly provided a notice that only parroted the regulatory text), *adopted* --- F. Supp. 3d ---, 2025 WL 2533673 (D. Minn. Sept. 3, 2025)).

The Western District of Oklahoma has also recently issued a number of favorable decisions granting habeas relief on the basis of violations of the pre-deprivation procedures at 8 C.F.R. § 241.13(i)(2)-(3). *Momennia v. Bondi*, No. 25-CV-1067-J, 2025 WL 3011896 (W.D. Okla. Oct. 15, 2025), *adopted*, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025) (regulatory violation constitutes due process violation requiring immediate release); *Pham v. Bondi*, No. 25-CV-1157-SLP, 2025 WL 3243870, at *1 (W.D. Okla. Nov. 20, 2025) ("A majority of district courts have found such regulatory defects amount to due process violations that entitle a petitioner to habeas relief. … The Court finds the majority view persuasive and consistent with the facts and circumstances of this case."); *Hamidi v. Bondi*, No. 25-CV-1205-G, 2025 WL 3452454, at *2 (W.D. Okla. Dec. 1, 2025) ("The Magistrate Judge found that ICE failed to comply with 8 C.F.R. § 241.13(i)(3) in re-detaining Petitioner. The Court agrees with and adopts the Magistrate Judge's findings in this regard."); *Sukhyani v. Bondi*, No. 25-CV-1243-J (W.D. Okla. Nov. 25, 2025).

The Southern District of Texas has also recently issued a favorable decision under

§ 241.13(i)(2)-(3). *See Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *8-10 (S.D. Tex. Oct. 16, 2025); *Phong Van Do v. Bondi*, No. 4:25-CV-05643, ECF No. 10 (Slip Op.) (S.D. Tex. Dec. 18, 2025); *Bon Van Nguyen v. Bondi*, No. 4:25-CV-05827, ECF No. 11 (Slip Op.) (S.D. Tex. Dec. 19, 2025); *Dang Pham v. Bondi*, No. 4:25-CV-05765-H, ECF No. 12 (Slip Op.) (S.D. Tex. Jan. 9, 2026); *Sang Minh Tran v. Bondi*, No. 4:26-CV-00192, ECF No. 9 (Slip Op.) (S.D. Tex. Jan. 30, 2026).

Conversely, Respondents make no argument and cite no cases about whether their actions in this matter complied with 8 C.F.R. § 241.13(i). Instead, Respondents suggest that a mulligan, rather than immediate release, is the proper remedy for regulatory violations.

Importantly, § 241.13 is the Secretary of Homeland Security's codified interpretation of the Supreme Court's *Zadvydas* decision. *See Zadvydas v. Davis*, 533 U.S. 678 (2001); *Momennia*, 2025 WL 3011896, at *3 n.7 [1] and accompanying text (W.D. Okla. Oct. 15, 2025). Respondents now seek to abandon their prior interpretation of *Zadvydas*. As recognized by § 241.13, *Zadvydas* requires changed circumstances to justify

---

[1] *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247(F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future. Except as provided in this new § 241.13, the existing detention standards in § 241.4 will continue to govern the detention or release of aliens who are subject to a final order of removal. Thus, aliens who are determined not to be a danger to the community or a flight risk may be released under § 241.4 regardless of whether there is a significant likelihood of removal.").

redetention after release on an OOS. Here, there is no factual basis supporting ICE's half-hearted expression of expectation to receive a travel document. ICE relies solely on unsupported conjecture and speculation. Under these facts, there are no changed circumstances that justified redetaining Petitioner; redetention occurred in violation of *Zadvydas* and regulation. *E.g.*, *Sun v. Noem*, 2025 WL 2800037, at *2-3 (S.D. Cal. Sept. 30, 2025) ("Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' and that '[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner.' The Court finds these kind of vague assertions—akin to promising the check is in the mail—insufficient to meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'") (record citations omitted); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Roble v. Bondi*, --- F. Supp. 3d. ---, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (finding insufficient the government's assertion that ICE "requested third country removal assistance from [Enforcement and Removal Operations] HQ"); *Sang Minh Tran v. Bondi*, No. 4:26-CV-00192, ECF No. 9 (Slip Op.) (S.D. Tex. Jan. 30, 2026) ("Per Respondents, travel documents have, at most, only been requested, and Petitioner's home country has not indicated a willingness to accept him or issue travel documents in the immediate future. The request for travel documents was not initiated until December 10, 2025, almost a month after Petitioner's re-detention. Therefore, the Court finds that there is not a

significant likelihood that removal will occur in the reasonably foreseeable future.") (record citation omitted).

Because Petitioner was previously released on an OOS, the government, under *Zadvydas* and regulation, has the burden of rebutting Petitioner's prior showing of non-deportability that was previously sufficient to obtain release. That did not happen. Petitioner's due process rights were violated by Respondents' noncompliance with the pre-deprivation procedures of § 241.13, and the Court must consequently order Petitioner's immediate release.

## II.   Respondents have failed to demonstrate changed circumstances justifying re-detention. To the extent Petitioner bears any burden, he has met it.

Respondents' primary error lies in failing to recognize that because Petitioner has already been released on an Order of Supervision ("OOS") pursuant to 8 C.F.R. § 241.13, *after having previously established no significant likelihood of removal in the reasonably foreseeable future* ("NSLRRFF"), it is Respondents who bear the initial burden of establishing "changed circumstances" to redetain under both federal regulation and *Zadvydas*.[2] Nothing in Respondents' responses or supporting declarations rebuts the prior

---

[2] *Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001) ("once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, **the Government must respond with evidence sufficient to rebut that showing**") (emphasis added); 8 C.F.R. § 241.13(i)(2) ("The Service may revoke an alien's release under this section and return the alien to custody **if, on account of changed circumstances,** the Service determines that **there is a significant likelihood that the alien may be removed in the reasonably foreseeable future**.") (emphasis added); *see also Roble v. Bondi*, No. 25-cv-3196, --- F. Supp. 3d ---, 2025 WL 2443453 (D. Minn. Aug. 25, 2025) (granting habeas and ordering release based on less egregious regulatory violations); *Sarail A. v. Bondi*, No. 25-CV-2144, 2025 WL 2533673 (D. Minn. Sept. 3, 2025) (same); *Yee S. v. Bondi*, No. 25-CV-02782-JMB-DLM, --- F. Supp. 3d ---, 2025 WL 2879479 (D.

finding of NSLRRFF or otherwise demonstrates changed circumstances regarding NSLRRFF. Therefore, Petitioner's detention is unlawful, in excess of statutory and regulatory authority, and is unconstitutional. Numerous courts around the country have recently granted habeas petitions to persons that are identically (or less favorably) situated to Petitioner.[3]

---

Minn. Oct. 9, 2025) (same); *Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, --- F. Supp. 3d ---, 2025 WL 2898985 (S.D. Cal. Oct. 10, 2025) (same); *Rokhfirooz v. Larose*, No. 25-CV-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (granting habeas and ordering release); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner was likely to succeed on unlawful redetention claim because "there is no indication that an informal interview was provided"); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387-88 (D. Mass. 2017) (holding that ICE's failures to follow regulatory revocation procedures rendered detention unlawful); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) ("because ICE did not follow its own regulations in deciding to redetain [the petitioner], his due process rights were violated, and he is entitled to release"); *Momennia v. Bondi*, No. 25-CV-1067-J, 2025 WL 3011896 (W.D. Okla. Oct. 15, 2025) (R&R), *adopted*, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025) (granting habeas relief based on a variety of regulatory violations similar to those presented by Petitioner); *Pham v. Bondi*, No. 25-CV-1157-SLP, 2025 WL 3477023 (W.D. Okla. Oct. 30, 2025) (R&R), *adopted* 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025) (same); *Hamidi v. Bondi*, No. 25-CV-1205-G, 2025 WL 3452454 (W.D. Okla. Dec. 1, 2025) (same); *Hmung v. Bondi*, No. 25-CV-1303-J, 2025 WL 3657221 (W.D. Okla. Dec. 9, 2025), *adopted* 2025 WL 3670499 (W.D. Okla. Dec. 17, 2025) (same); *Phong Van Do v. Bondi*, No. 4:25-CV-05643, ECF No. 10 (Slip Op.) (S.D. Tex. Dec. 18, 2025) (same); *Bon Van Nguyen v. Bondi*, No. 4:25-CV-05827, ECF No. 11 (Slip Op.) (S.D. Tex. Dec. 19, 2025) (same); *Liban O. v. Bondi*, No. 25-CV-04560-JWB-ECW, ECF No. 10 (D. Minn. Dec. 17, 2025) (same).

[3] *Supra* at n.2; *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) ("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future."); *Hernandez Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("The[] regulations clearly indicate, upon revocation of supervised release, it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed."); *Nguyen v. Hyde*, No. 25-cv-11470-MJJ, 2025 WL 1725791, at *3 n.2 (D. Mass. June 20, 2025); *cf. Va V. v. Bondi*, No. 25-CV-2836 (LMP/JFD), *slip op.* at *6-12 (D. Minn. Aug. 11, 2025) (denying relief because a travel

To the extent that Respondents insinuate the *Zadvydas* clock should automatically reset every time a noncitizen is released from custody on an OOS, Petitioner respectfully demurs. Numerous cases indicate otherwise,[4] as does common sense. If Respondents'

---

document was obtained, but holding that until ICE proved it had a travel document allowing for immediate deportation, it failed to demonstrate changed circumstances justifying redetention of an individual under 8 C.F.R. § 241.13(i)).

[4] *See, e.g.*, *Zadvydas*, 533 U.S. at 701; *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) ("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future."); *Hernandez Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("The[] regulations clearly indicate, upon revocation of supervised release, it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed."); *Giorges v. Kaiser*, No. 25-cv-07683, 2025 WL 2898967, at *8 n.5 (N.D. Cal. Oct. 10, 2025) ("When calculating time spent in detention, courts aggregate nonconsecutive detention periods. The clock does not restart each time that a nonconsecutive detention begins for a noncitizen."); *Nguyen v. Scott*, --- F. Supp. 3d ---, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025) (same); *Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1876807, at *6 (N.D. Cal. Apr. 19, 2018) (same); *Nhean v. Brott*, No. 17-28-PAM-FLN, 2017 WL 2437268, at *2 (D. Minn. May 2, 2017) (report and recommendation) (holding that when the government detains an alien for 90 days, releases him, and then re-detains him, the second detention "was presumptively reasonable for an additional 90 days (six months in total)," not an additional six months), adopted, 2017 WL 2437246 (D. Minn. June 5, 2017); *Bailey v. Lynch*, No. 16-2600-JLL, 2016 WL 5791407, at *2 (D.N.J. Oct. 3, 2016) (holding that the six-month *Zadvydas* period "does not restart simply because an alien who [was previously detained and then] has previously been released is taken back into custody"); *Farah v. INS*, No. Civ. 02-CV-4725-DSD-RLE, 2003 WL 221809, at *5 (D. Minn. Jan. 29, 2013) (holding that when the government releases an alien and then revokes the release based on changed circumstances, "the revocation would merely restart the 90-day removal period, not necessarily the presumptively reasonable six-month detention period under *Zadvydas*"); *Chen v. Holder*, No. 14-CV-2530, 2015 WL 13236635 (W.D. La. Nov. 20, 2015) ("Surely, under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government, as was done in this case, while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals."); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. May 2, 2025) ("because ICE did not follow its own regulations in deciding to redetain [the petitioner], his due process rights were violated, and he is entitled to release"); *Pham v. Bondi*, No. 25-CV-1157-SLP,

11

interpretation wins out, Respondents should simply release noncitizens at 179 days of custody for a 24-hour period before redetaining the noncitizen. This sort of gamesmanship would be rewarded and prevent *Zadvydas* claims from ever arising. It is unlikely the Supreme Court intended such a result.[5]

Additionally, if there is any question about whether to aggregate detention periods, the choice not to aggregate only makes sense if re-detention occurred in accordance with law. Here, there is no indication in the record that Respondents lawfully revoked Petitioner's OOS under 8 C.F.R. § 241.13(g) or (i)(2)-(3) because there is no indication that Petitioner was ever notified in writing (or even orally) of the changed circumstances

---

2025 WL 3477023 (W.D. Okla. Oct. 30, 2025) (R&R), *adopted*, 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025) (granting a § 1231 habeas claim roughly 3 months after Pham was re-detained in violation of regulation); *Sukhyani v. Bondi*, No. 25-CV-1243-J, 2025 WL 3283274, at *1 n.2 (W.D. Okla. Nov. 25, 2025) ("Because Petitioner was detained after he was initially ordered removed, Respondents agree that he has been 'in post order detention in excess of six months' [Doc. No. 18 at 20] despite the fact that his current detention has only lasted approximately five months."); *Sang Minh Tran v. Bondi*, No. 4:26-CV-00192, ECF No. 9 (Slip Op.) at 2 n.1 (S.D. Tex. Jan. 30, 2026) ("Many district courts have held that the *Zadvydas* period is cumulative and that periods of re-detention should be aggregated with the initial period of detention following the final removal order. … The Court is persuaded by the reasoning in these decisions.") (citations omitted).

[5] In *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025), the district court stated, "the removal-period clock restarts when an alien subject to a removal order is again detained by ICE." However, Liu conceded this in his case and the accuracy of that claim was thus not before the court. *See Liu* at *2 ("petitioner appears to concede this point"). Conversely, Petitioner alleged in his verified habeas corpus petition that the regulation that resets the 90-day clock "is *ultra vires* to statute as an arbitrary or capricious interpretation of statute that exceeds statutory authority," distinguishing the present case from the concessions in *Liu*. ECF No. 1, ¶ 77. Moreover, even if the regulation is valid, restarting the clock pursuant to the regulation necessarily presumes lawful redetention under the regulations, which did not occur here. Consequently, Petitioner's periods of confinement must be aggregated for purposes of the *Zadvydas* claim.

that allegedly justified his re-detention, nor is there any indication in the record that Petitioner ever received an interview at which he was permitted to present evidence to demonstrate no significant likelihood of removal in the reasonably foreseeable future, nor is there any indication that the Executive Associate Commissioner, acting through the HQPDU, had any involvement in the continued custody decisions made in Petitioner's case.[6] Because Petitioner's due process rights were violated at the moment of re-detention, Respondents have unclean hands and cannot receive the windfall benefit of non-aggregated detention periods assuming *arguendo* there are ever circumstances where detention periods cannot or should not be aggregated.

As the *Abuelhawa* court sitting in the Southern District of Texas recently noted, "[t]he requisite showing under" 8 C.F.R. § 241.13(i)(2) "must be made, and of its terms

---

[6] *See, e.g.*, *Roble v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2443453 (D. Minn. Aug. 25, 2025); *Sarail A. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2533673 (D. Minn. Sept. 3, 2025); *Yee S. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2879479 (D. Minn. Oct. 9, 2025); *Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985 (S.D. Cal. Oct. 10, 2025); *Rokhfirooz v. Larose*, No. 25-CV-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (granting habeas and ordering release); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner was likely to succeed on unlawful redetention claim because "there is no indication that an informal interview was provided"); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387-88 (D. Mass. 2017) (holding that ICE's failures to follow regulatory revocation procedures rendered detention unlawful); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) ("because ICE did not follow its own regulations in deciding to redetain [the petitioner], his due process rights were violated, and he is entitled to release"); *Momennia v. Bondi*, No. 25-CV-1067-J, 2025 WL 3011896 (W.D. Okla. Oct. 15, 2025), *adopted*, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025); *Pham v. Bondi*, No. 25-CV-1157-SLP, 2025 WL 3243870, at *1 (W.D. Okla. Nov. 20, 2025); *Hamidi v. Bondi*, No. 25-CV-1205-G, 2025 WL 3452454, at *2 (W.D. Okla. Dec. 1, 2025) ("The Magistrate Judge found that ICE failed to comply with 8 C.F.R. § 241.13(i)(3) in re-detaining Petitioner. The Court agrees with and adopts the Magistrate Judge's findings in this regard.").

can only be made, by the Government. This is so because the provision states that an alien may be returned to custody 'if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the foreseeable future.'" *Abuelhawa*, 2025 WL 2937692, at *8 (alteration as original).

"Courts have found that… increase in frequency of removals alone does not demonstrate significant likelihood of removal in the reasonably foreseeable future." *Pham v. Bondi*, No. 25-CV-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025); *compare, e.g., Sang Nguyen* v. *Bondi*, No. EP-25-CV-323-KC, 2025 WL 3120516 at *7 (W.D. Tex. Nov. 7, 2025) (lack of details in Vietnam removal data contributed to no finding of significant likelihood of removal in the reasonably foreseeable future) *and, e.g., Nguyen v. Hyde*, 788 F. Supp. 3d 144, 151-52 (same) *with Tran v. Baker*, No. 25-CV-1598-JRR, 2025 WL 2085020 at *4-5 (D. Md. July 24, 2025) (finding that detailed removal data for pre-1995 Vietnamese citizens, travel documents obtained prior to detainment, and scheduled meeting with Vietnamese consulate established significant likelihood of removal in the reasonably foreseeable future); *Sang Minh Tran v. Bondi*, No. 4:26-CV-00192, ECF No. 9 (Slip Op.) (S.D. Tex. Jan. 30, 2026).

At present, the following is true: (1) Respondents do not have a travel document, nor have they even submitted a request for a travel document to any country; (2) no country has promised that a travel document will be forthcoming; (3) there is no known timeline for when a travel document will be produced assuming *arguendo* one is eventually issued, nor for what country; (4) Respondents have not bothered to submit a travel document for months after illegally detaining Petitioner; (5) Petitioner has a valid

14

DCAT order that prevents repatriation to his only country of citizenship; (6) Respondents detained Petitioner in violation of federal regulations; and (7) there is a nationwide injunction in effect requiring certain substantial steps to be taken while the noncitizen remains in the United States before removal to a third-country can occur. *See D.V.D. v. DHS*, No.: 25-CV-10676-Bem, 2026 WL 521557, at *42, *44 (D. Mass. Feb. 25, 2026).

As was true in *Momennia*, as of March 10, 2026, "ICE's sole justification for [Petitioner's] continued detention appears to be that 'we're working on it' while conceding 'a lack of visible progress.'" *Momennia*, 2025 WL 3011896, at *7. "That does not suffice under either the regulations or *Zadvydas*." *Id.* (citing *Yee S. v. Bondi*, 2025 WL 2879479, at *5 (D. Minn. Oct. 9, 2025) (finding that "the record does not support a determination that Petitioner is significantly likely to be removed in the reasonably foreseeable future" when Petitioner's home country of Burma was not an option for removal, ICE could "direct the Court to no facts in the record supporting a conclusion that any specific country where Petitioner is not a citizen would agree to accept him," and "Respondents simply repeat the vague and conclusory assertions that 'ICE is in the process of obtaining a travel document'"); *Sun v. Noem*, 2025 WL 2800037, at *2-3 (S.D. Cal. Sept. 30, 2025) ("Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' and that '[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner.' The Court finds these kind of vague assertions— akin to promising the check is in the mail—insufficient to meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'") (record citations omitted); *Hoac v. Becerra*, 2025

15

WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Roble v. Bondi*, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (finding insufficient the government's assertion that ICE "requested third country removal assistance from [Enforcement and Removal Operations] HQ").

> "ICE, like any agency, has the duty to follow its own federal regulations. As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid." *Nguyen v. Hyde*, 2025 WL 1725791, *5 (D. Mass. June 20, 2025) (quoting *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017)).

*Momennia*, 2025 WL 3011896, at *8.

Put as simply as possible, Respondents have provided no evidence of changed circumstances. Instead, they simply argue that Petitioner has failed to meet his initial burden, which he does not bear. Respondents have failed to meaningfully argue that they have rebutted Petitioner's prior showing of no significant likelihood of removal in the reasonably foreseeable future, and Respondents have failed to demonstrate in response to the petition that there is presently a significant likelihood of removal in the reasonably foreseeable future. *E.g.*, *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) ("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future."); *Hernandez Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("The[] regulations clearly

indicate, upon revocation of supervised release, it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed.").

## CONCLUSION

The Court must order Respondents to immediately release Petitioner subject to the conditions of his previous order of supervision with a full return of all property that was seized from him at or subsequent to the time of his initial arrest on January 20, 2026.

DATED: March 10, 2026                              Respectfully submitted,

**RATKOWSKI LAW PLLC**

/s/ *Nico Ratkowski*

Nico Ratkowski (Atty. No.: 0400413)
332 Minnesota Street, Suite W1610
Saint Paul, MN 55101
P: (651) 755-5150
E: nico@ratkowskilaw.com

*Attorney for Petitioner*