UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Carlos F., <br><br> Petitioner, <br><br> v. <br><br> Pamela Bondi, Attorney General; Kristi Noem, Secretary of Homeland Security; Todd M. Lyons, Acting Director of U.S. Immigration and Customs Enforcement; Marcos Charles, Acting Executive Associate Director for Enforcement and Removal Operations; Peter Berg, Field Office Director for Enforcement and Removal Operations; U.S. Immigration and Customs Enforcement; U.S. Department of Homeland Security; and John Doe, Local Detention Authority, <br><br> Respondents. | No. 26-cv-0469 (SRN/EMB) <br><br> **ORDER** |

Nicholas Ratkowski, Ratkowski Law PLLC, 332 Minnesota St., Ste. W1610, Saint Paul, MN 55101, for Petitioner

Matthew Isihara and Joseph Teirab, U.S. Attorney's Office, 300 S. 4th St., Minneapolis, MN 55415, for Federal Respondents

SUSAN RICHARD NELSON, United States District Judge

Before the Court is Carlos F.'s Petition for Writ of Habeas Corpus ("Petition") [Doc. No. 1], on reconsideration. For the reasons set forth below, the Court grants the Petition and orders Carlos F.'s immediate release.

1

I. BACKGROUND

A. Immigration Proceedings and DCAT Approval

Carlos F. is a citizen of El Salvador and a resident of Minnesota. (Pet. ¶¶ 1, 25.) After he had been previously removed from the United States, he re-entered the United States in 2021. (*Id.* ¶ 9.) Following his conviction for illegal entry after removal, he was detained by U.S. Immigration and Customs Enforcement ("ICE") on March 9, 2022. (*Id.* ¶¶ 10–11.)

While in immigration detention, Carlos F. claimed fear of returning to El Salvador, prompting immigration officers to interview him in April 2022. (*Id.* ¶ 12.) Immigration officers found that he had established a reasonable fear of torture, and on April 8, 2022, referred his case to an immigration judge. (*Id.* ¶¶ 12–13.)

On May 26, 2022, Carlos F. was ordered removed from the United States and was concurrently denied withholding of removal under the Immigration and Nationality Act ("INA") § 241(b)(3), withholding of removal under the Convention Against Torture ("CAT"), and deferral of removal under the Convention Against Torture ("DCAT") as it pertains to El Salvador.[1] (*Id.* ¶ 42.) After his appeal to the Board of Immigration Appeals ("BIA") and remand to immigration court, his removal order remained in place, but the

---

[1] To obtain relief under the CAT, a noncitizen must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Mouawad v. Gonzales*, 485 F.3d 405, 413 (8th Cir. 2007) (quoting 8 C.F.R. § 1208.16(c)(2)).

immigration court granted his DCAT application on December 27, 2022. (*Id.* ¶¶ 14, 44–45; Minner Decl., Ex. A (Order of Immigration Judge) [Doc. No. 30-1].) The Department of Homeland Security ("DHS") did not appeal the final immigration court order, rendering it administratively final. (Pet. ¶ 45.)

Accordingly, on December 29, 2022, DHS released Carlos F. from immigration custody subject to an Order of Supervision. (*Id.* ¶¶ 14, 48.) The Order of Supervision required him to maintain contact with ICE and comply with regular check-ins. (*Id.* ¶ 49.) For the three-year period between December 2022 and January 2026, Carlos F. regularly attended ICE check-ins, maintained an accurate address with ICE, and complied with all rules regarding ankle monitoring. (*Id.* ¶ 51.) Respondents have presented no evidence of Petitioner's non-compliance with his conditions of supervision.

On January 20, 2026, ICE agents lured Carlos F. outside of his workplace, arrested him, and detained him. (*Id.* ¶ 50.) He further alleges, upon information and belief, that ICE did not serve him with a Notice of Revocation of Release ("Notice") to revoke his Order of Supervision. (*Id.* ¶ 53.)

### B. Habeas Petition and Related Proceedings

On the same day of his arrest and detention, January 20, Carlos F. filed his Petition. He sought several forms of relief, including an order restraining Respondents from moving him out of state during the pendency of his Petition, and an order requiring his immediate release. (Pet. at 30–33.)

After his arrest, ICE briefly held him in Minnesota before transporting him to Texas on January 21, 2026. (Carlos F. Decl. [Doc. No. 11] ¶ 9.) ICE agents detained him at the

3

Camp East Montana ICE detention facility in El Paso, Texas for approximately five days. (*Id.* ¶ 8.)

On January 23, 2026, the Government filed a criminal complaint against Carlos F. in the District of Minnesota, *see* 26-mj-0066 (EMB), under seal, and requested an arrest warrant. (*See* Second Robinson Decl., Ex. 1 [Doc. No. 20-1] at 2.) Carlos F. was transferred from ICE custody to the El Paso County Jail in El Paso, Texas, pending transfer to the District of Minnesota for criminal proceedings. (*Id.*) Shockingly, two days prior to the filing of sealed criminal charges, DHS publicly posted Petitioner's photograph on its DHS.gov website, and labeled him as among the "Worst of the Worst," stating that he had "violently resisted arrest, assaulting officers by punching, kicking, and attempted to grab the gun of a law enforcement officer." (*See* Pet'r's Resp. [Doc. No. 22] at 3.)

On February 6, 2026, Respondents filed their response to the Petition, moving to dismiss or transfer venue [Doc. No. 6]. They acknowledged that Carlos F. was presently in criminal custody, and they sought dismissal of the Petition or, alternatively, requested transfer of the habeas case to the Western District of Texas, on the ground that this Court lacked personal jurisdiction. (Resp'ts' Mot. to Dismiss or Transfer at 1–2; Resp'ts' Mem. Supp. Dismissal or Transfer [Doc. No. 7] at 1–3.)

On February 12, 2026, the Court found that in light of the pending criminal proceedings and the fact that Carlos F. was no longer in Respondents' physical custody, habeas relief from his immigration detention was no longer needed. (Feb. 12, 2026 Order [Doc. No. 9] at 2.) Accordingly, the Court denied Carlos F.'s Petition without prejudice and denied as moot Respondents' Motion to Dismiss or Transfer. (*Id.*)

4

On February 16, 2026, Carlos F. filed a Motion for Reconsideration [Doc. No. 10], along with his Declaration. In his Declaration, he stated that although he was temporarily in the El Paso County Sheriff's Office's custody from January 26 through February 10, 2026, he was returned to ICE custody on February 10, 2026, and was being held at the West Texas Detention Facility in Sierra Blanca, Texas. (Carlos F. Decl. ¶ 12.)

The Court found that compelling circumstances warranted reconsideration, granted Petitioner's motion, and reopened the case. (Feb. 17, 2026 Order [Doc. No. 13] at 3–4.) The Court ordered Respondents to respond to Carlos F.'s Declaration no later than February 22, 2026, with reliable evidence concerning whether he was in ICE or criminal custody, where he was currently detained, and if not in Minnesota, when he would be transported back to Minnesota. (*Id.* at 3.)

Respondents failed to timely respond. Weeks later, after additional court orders, and following a hearing at which the Court ordered the Respondents to show cause why they should not be held in contempt of court for failing to comply with the Court's orders, Respondents confirmed that Carlos F. was in criminal custody in Texas, where he had been held since approximately January 26 or 27, 2026. (Status Update [Doc. No. 23].)

In support of Respondents' position, they also submitted an exhibit captioned "DHS Homeland Security Investigations' Report of Investigation" ("Report") [Doc. No. 20-1]. The Report confirmed that agents executed the Minnesota criminal arrest warrant on January 26, 2026 in Texas, that Carlos F. was booked into the El Paso County Jail, and that he would be transferred to Minnesota after initial criminal proceedings in the Western

5

District of Texas. (Report at 2.) The Report further noted that Carlos F. waived an identity hearing in the Western District of Texas, and concluded, "The case is now closed." (*Id.*)

The Court found that because Carlos F. was no longer in Respondents' custody, habeas relief from immigration detention was no longer necessary. (Mar. 4, 2026 Order [Doc. No. 25] at 11.) Moreover, in the criminal case, 26-mj-0066 (EMB), more than 30 days had elapsed from the time of the filing of the criminal complaint and Carlos F.'s arrest, and the Government failed to file an information or indictment in that time, as required by the Speedy Trial Act, 18 U.S.C. § 3161(b). The Government moved to dismiss the criminal case under Federal Rule of Civil Procedure 48. (26-mj-0066 (EMB) at Doc. No. 11.) Magistrate Judge Elsa Bullard dismissed the criminal case under 18 U.S.C. § 3161(b), denied the Government's motion as moot, and ordered that Carlos F. be released from custody. (26-mj-0066 (EMB) at Doc. No. 13.)

In the habeas action, counsel for Respondents, Matthew Isihara, further confirmed that "there is no detainer that will require Petitioner to be returned to the custody of the Department of Homeland Security following the conclusion of his criminal matter." (Resp'ts' Response to OSC [Doc. No. 16] at 1.) Likewise, ICE Deportation Officer William Robinson submitted a declaration in which he attested that "Databases do not currently indicate any active detainer from [U.S. Enforcement and Removal Operations]." (Second Robinson Decl. [Doc. No. 20] ¶ 7.)

Accordingly, on March 4, 2026, the Court ruled that Carlos F. must be released from custody, consistent with Magistrate Judge Bullard's Order. (March 4, 2026 Order at 11.) Because of his pending release from criminal custody and the lack of an immigration

detainer to transfer him to immigration custody, the Court denied without prejudice Carlos F.'s Petition and declined to issue sanctions against Respondents. (*Id.* at 13.)

### C. Reconsideration of March 4, 2026 Order

On March 8, 2026, the parties filed a Joint Motion for Reconsideration of the March 4, 2026 Order. They sought reconsideration because on March 5, 2026, the U.S. Marshal's Service transferred Carlos F. to ICE's custody pursuant to a Warrant of Removal dated March 5, and he remained in immigration detention in Texas. (Jt. Mot. to Reconsider [Doc. No. 26] at 1; *see also* Mar. 5, 2026 Warrant of Removal/Notice, Form I-205 [Doc. No. 29-1] at 1–2.)

In addition to the Warrant of Removal, a Notice of Intent/Decision to Reinstate Prior Order, Form I-871, dated March 5, 2026, states that in accordance with § 241(a)(5) of the INA and 8 C.F.R. 241.8, "[Y]ou are hereby notified that the Secretary of Homeland Security intends to reinstate the order of removal entered against you." (Mar. 5, 2026 Warrant of Removal/Notice at 3.) The March 5, 2026 Notice refers to a prior order of deportation dated September 27, 2016, with removal executed on March 23, 2017, and asserts that Carlos F. illegally reentered the United States at an unknown date and time. (*Id.*) In addition, it provides,

> In accordance with section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You do not have a right to a hearing before an immigration judge.

(*Id.*)

7

In addition to the Warrant of Removal and the March 5, 2026 Notice, an ICE deportation officer completed a Record of Deportable/Admissible Alien, Form I-213, ("Form I-213") on March 5, 2026 [Doc. No. 29-2]. It is filled with critical errors of fact.

Under "Current Criminal Charges," the Form I-213 lists two, both dated March 5, 2026: (1) a violation of 8 U.S.C. § 1326 for re-entry of removed alien; and (2) a violation of 18 U.S.C. § 1114 for "protection of officers and employees of the United States." (Form I-213 at 2.) The Court has no knowledge as to whether the first charge is actually current, but the second reference to a "current criminal charge" is incorrect, as Magistrate Judge Bullard had already dismissed the charge by March 5. Under "Credible Fear Statement," the Form I-213 provides that "[s]ubject was questioned using CBP Form I-215 (Record of Sworn Statement) regarding fear of being returned to subject's country of origin," followed by a redacted sentence. (*Id.* at 3.) Under "Disposition," the Form I-213 states that Carlos F. "was processed for 8 U.S.C. § 1231 Reinstatement of Removal and will be held pending an appearance before a U.S. Magistrate for prosecution." (*Id.* at 4.) Near the end of the Form, under "Addendum," it states that "[o]n 03/05/2026 subject was released from West Texas after time served for the following charge – 18 U.S.C. 111 [sic]" and that he "has no petitions pending that allows [sic] him to be or remain present in the United States." (*Id.*) These statements are also incorrect, as Carlos F. was not released for "time served"—he was released because the Government failed to pursue criminal charges and requested dismissal of the case, and the Court dismissed the case.

In light of the changed circumstances of Petitioner's immigration detention, the Court found that compelling circumstances warranted granting reconsideration of Carlos

8

F.'s Petition on the merits. (Mar. 9, 2026 Order [Doc. No. 28] at 5–6.) The Court approved the parties' proposed expedited briefing schedule. (*Id.*) In addition, the Court ordered that ICE immediately return Carlos F. to Minnesota so that he could have full access to his counsel. (*Id.* at 6.) Respondents transferred Carlos F. back to Minnesota on March 10, 2026, where he is currently held in immigration detention at the Sherburne County Jail in Elk River, Minnesota. (Minner Decl. [Doc. No. 30] ¶ 20; Resp'ts' Status Update [Doc. No. 32].)

### D. Parties' Positions on the Merits

In his Petition, Carlos F. asserts that Respondents have detained him in violation of: (1) the INA and its implementing regulations, 8 C.F.R. § 241.13(i)(2)-(3); (2) the Fifth Amendment of the U.S. Constitution; and (3) the Administrative Procedures Act ("APA").

Respondents argue that because Carlos F. is subject to a final order of removal, his current detention is mandatory. (Resp'ts' Mem. [Doc. No. 29] at 3–4.) They argue that under *Zadvydas v. Davis*, 533 U.S. 678 (2001), his Petition is premature because he is currently held in the initial 90-day period of post-removal-order detention. (Resp'ts' Mem. at 7–9.) Moreover, while Respondents acknowledge that Carlos F. cannot be removed to El Salvador in light of his DCAT status, they state that ICE "plans to pursue removal of Petitioner to Mexico via proper lawful third-country removal protocols as soon as the injunction [in *D.V.D. v. U.S. Dep't of Homeland Sec.*, ---F. Supp. 3d---, 2026 WL 521557, at *44 (D. Mass. Feb. 25, 2026), *appeal filed*, No. 26-1212 (1st Cir. Feb. 27, 2026)][2] may

---

[2] *D.V.D.* is a class action lawsuit in the District of Massachusetts involving

be lifted." (Minner Decl. ¶ 21.) Finally, Respondents contend that Petitioner's procedural challenges to his detention fail to afford a right to habeas relief. (Resp'ts' Mem. at 9–10.)

In his Reply, Carlos F. reasserts that his detention is unlawful under INA regulations and *Zadvydas*. (Pet'r's Reply [Doc. No. 31] at 3–4.) Fundamentally, Carlos F. argues that Respondents fail to recognize that he has already been released on an Order of Supervision, after it was previously established that there was no significant likelihood of his removal in the reasonably foreseeable future. (*Id.* at 7.) He contends that Respondents have failed to meet their burden to rebut that conclusion with notice of changed circumstances showing a significant likelihood of removal in the reasonably foreseeable future, as required by 8 C.F.R. § 241.13(i).[3] (*Id.*) To the contrary, he argues that Respondents have proposed only

---

> [a]ll individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the [Immigration and Nationality Act ("INA")] (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*D.V.D.*, 2026 WL 521557, at *3, 44. The court set aside the third-country removal policy as unlawful, finding that "class members have the right to meaningful notice before removal to any third country" and "to a meaningful opportunity to raise a country-specific claim against removal before removal to any third country." *Id.* at *44. However, the court stayed its judgment until March 12, 2026, "or until the First Circuit Court of Appeals rules on any motion for an administrative stay or stay pending appeal, whichever occurs first." *Id.* On March 11, 2026, the First Circuit granted the government's alternative request for an administrative stay of the district court's order until it rules on the government's motion for a stay pending appeal, which the First Circuit intends to do "promptly." *D.V.D.*, No. 26-1212, Order of Court (1st Cir. Mar. 11, 2026).

[3] While Petitioner bears the ultimate burden of proving entitlement to habeas relief, he argues that Respondents bear the initial burden of establishing that his re-detention was lawful under 8 C.F.R. § 241.13(i)(2)-(3) and *Zadvydas*, and that they have failed to meet

10

vague plans regarding his removal to a third country, with no specifics about travel documents or a timeline. (*Id.* at 13–16.) Carlos F. further asserts that the injunction in *D.V.D.* requires numerous steps to be taken prior to third-country removal, none of which have occurred here. (*Id.*) Finally, Carlos F. cites authority from around the country in which courts have ordered release from custody as the appropriate remedy for unlawful detention in this context. (*Id.* at 4–6.)

## II.   DISCUSSION

A district court may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). A person challenging the lawfulness of immigration-related detention may also avail themselves of a writ of habeas corpus.[4] *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas*, 533 U.S. at 687; and *Demore v. Kim*, 538 U.S. 510, 517 (2003)).

As noted, Carlos F. presents three arguments in support of his position that his detention violates the Constitution or laws of the United States. First, he alleges that Respondents have violated the INA and its implementing regulations, 8 C.F.R. § 241.13(i)(2)-(3), by failing to follow their own regulations requiring notice, and failing to sufficiently show changed circumstances that make his removal significantly likely in the

---

their burden. (Pet'r's Reply at 3.) The Court finds that regardless of which party bears the burden of proof regarding the lawfulness of Petitioner's re-detention, the facts here support only one result.

[4] In Respondents' Response to the merits of the Petition, they do not challenge the Court's jurisdiction.

reasonably foreseeable future. (Pet. ¶¶ 102–06.) Second, he asserts a violation of his Fifth Amendment right to due process. (*Id.*¶¶ 107–10.) Third, he alleges that Respondents' conduct is arbitrary and capricious, in violation of the APA. (*Id.* ¶¶ 111–16.) Because the Court grants the Petition based on Petitioner's first argument, it need not address his other bases for relief. *See United States v. Turecheck*, 138 F.3d 1226, 1229 (8th Cir. 1998) (stating that courts have a strong duty to avoid constitutional issues that need not be resolved in order to address the parties' rights).

"Agencies must follow their own regulations." *Saengnakhone S. v. Noem*, No. 25-cv-4775 (ECT/LIB), 2026 WL 34132, at *3 (D. Minn. Jan. 6, 2026) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954); *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1998)). When ICE detains a noncitizen pursuant to a final order of removal, it is required to release the noncitizen on an order of supervision if there is no significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(g)-(h); *see also Zadvydas*, 533 U.S. at 699–700 (2001) ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

Here, although Carlos F. is subject to a final order of removal, his DCAT status precludes ICE and U.S. Enforcement and Removal Operations ("ERO") from removing him to El Salvador. After detaining him from March 9, 2022 through December 29, 2022, ICE released Carlos F. on an Order of Supervision two days after the immigration court granted him DCAT status. (Pet. ¶¶ 10–11, 44–45, 48.) Again, to obtain DCAT status, the immigration court found that it was more likely than not that Carlos F. would be tortured

if he were removed to El Salvador. *See* 8 C.F.R. § 1208.16(c)(2). Thus, over three years ago, ICE released him on supervision because it determined that his removal to El Salvador was not significantly likely in the reasonably foreseeable future in light of his DCAT status.

Respondents focus on the ripeness of Petitioner's claim under *Zadvydas*, tying mandatory detention to the timing of his January 20, 2026 arrest. (*See* Resp'ts' Response at 6–8.) Their focus is misplaced, as they overlook the significant fact of Petitioner's prior period of post-removal-order detention, his release on supervision, and his *re-detention*. Once ICE releases a noncitizen on an order of supervision, it can only revoke his release in two circumstances: (1) for violations of conditions of an order of supervision; or (2) if "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). Here, Respondents do not assert that Carlos F. violated the conditions of his Order of Supervision, therefore, their revocation of his release must be based on changed circumstances under 8 C.F.R. § 241.13(i)(2), i.e., a significant likelihood of his removal in the reasonably foreseeable future.

### A. Notice of Reasons for Revocation

If ICE decides to revoke a noncitizen's release under 8 C.F.R. § 241.13(i)(2), the noncitizen must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). The "reasons for revocation" cannot consist of merely conclusory allegations, but must contain specific facts that support

13

ICE's revocation decision. *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 783–84 (D. Minn. 2025); *Roble v. Bondi*, 803 F. Supp. 3d 766, 771–72 (D. Minn. 2025). At the informal interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(3).

Here, Carlos F. asserts that upon his arrest and re-detention on January 20, 2026, ICE provided no notice of reasons for the revocation of his release, either in writing or orally. (Pet. ¶ 53; Pet'r's Reply at 12.) Indeed, the record contains no evidence of notice of the changed circumstances that allegedly justified Petitioner's re-detention. Even in instances in which ICE has provided notice to detainees, when the notice merely parrots the regulatory language governing re-detention, courts have found such notice insufficient to satisfy the "reasons for revocation" under the regulation. *See Yee S. v. Bondi*, 806 F. Supp. 3d 894, 898–900 (D. Minn. 2025); *Sarail A.*, 803 F. Supp. 3d at 781–84; *Roble*, 803 F. Supp. 3d at 771–72. Here, ICE failed to provide notice of any facts to support its revocation decision—let alone specific facts, as the regulation requires.

While the regulations contemplate that the noncitizen will have an opportunity to respond to the reasons for revocation stated in the notice, the noncitizen cannot respond "if the notification does not actually *state* any reasons for revocation." *Roble*, 803 F. Supp. 3d at 772 (stating, "Not only does this scenario border on the Kafkaesque; it is also contrary to law."). The record here contains no evidence of notice of reasons for revocation, and no evidence of an interview or the opportunity to respond. Because ICE violated its own

regulations when it re-detained Petitioner without notifying him of the reasons for his re-detention, he is entitled to habeas relief.

### B. Changed Circumstances

Furthermore, even if ICE had provided adequate notice, it has not demonstrated why changed circumstances would render Carlos F.'s removal significantly likely in the reasonably foreseeable future. "ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)). When ICE claims that it made such a determination, courts should review that determination in light of the relevant regulations. *Id.* The regulations instruct ICE to consider the following factors:

> [T]he history of the [noncitizen's] efforts to comply with the order of removal, the history of [ICE's] efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of [ICE's] efforts to remove this [noncitizen] and the [noncitizen's] assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of [noncitizens] to the country or countries in question.

8 C.F.R. § 241.13(f).

Here, in the Declaration of ICE Deportation Officer Angel Minner, she acknowledges that ICE/ERO cannot remove Carlos F. to El Salvador in light of his DCAT status. (Minner Decl. ¶ 21.) However, she states that ICE/ERO "will pursue third country removal efforts" to Mexico, which currently accepts nationals of several Western-

15

Hemisphere countries, including El Salvador, for removal." (*Id.*) Officer Minner contends that ICE/ERO "plans to pursue" Petitioner's removal to Mexico "as soon as the injunction [in *D.V.D.*] may be lifted." (*Id.*)

The Court finds that Respondents' basis for changed circumstances fails to show that Petitioner's removal is any more likely now than the day he was released on his Order of Supervision. Under similar facts in *Roble*, Judge Laura Provinzino found that the bare fact that ICE officials had requested third-country removal assistance from ICE headquarters said nothing about the history of ICE's efforts to remove similarly situated persons to third countries, the ongoing nature of ICE's efforts to remove the petitioner, and the reasonably foreseeable results of those removal efforts. 803 F. Supp. 3d at 773. Petitioner points out additional omissions in ICE's plans to pursue his removal to Mexico: (1) Respondents do not have a travel document, nor have they submitted a request for a travel document to any country; (2) no country has promised that a travel document will be forthcoming; (3) there is no known timeline for when a travel document will be produced assuming one is eventually issued;[5] (4) Petitioner's DCAT status prevents his repatriation to his only country of citizenship; (5) Respondents detained him in violation

---

[5] Other courts have found that ICE's mere intent to apply for a travel document did not constitute a "changed circumstance" showing that removal was reasonably foreseeable. *See, e.g., Nguyen v. Hyde*, 788 F. Supp. 3d 144, 151–52 (D. Mass. 2025) (finding "scant information" about "what concrete steps ICE has taken" to process a travel document and the likely outcome of that document request); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (noting lack of details "about why a travel document could not be obtained in the past" and "why obtaining a travel document is more likely this time around."). Deportation Officer Minner's Declaration fails to address travel documents altogether.

16

of federal regulations; and (6) the *D.V.D.* injunction requires ICE to take certain substantial steps before effecting removal to a third country.⁶ (Pet'r's Reply at 14–15.)

Moreover, Respondents' own actions have further complicated Carlos F.'s removal to a third country. As Petitioner notes, although DHS recklessly published his photograph on its official website, describing him as among the "Worst of the Worst," Respondents make no attempt to explain why Mexico, or any country, would agree to accept the "Worst of the Worst." (*Id.* at 2.)

Although Respondents argue that Petitioner's "procedural challenges to [Petitioner's] re-detention" grounded in immigration regulations fail to warrant his requested relief because "none of the procedural issues . . . would require Petitioner's release from custody," (Resp'ts' Response at 9), the Court disagrees. Again, habeas relief may be granted to persons who demonstrate that they are "in custody in violation of the . . . laws . . . of the United States." 28 U.S.C. § 2241(c)(3). Government agencies must follow their own regulations. *See Accardi*, 347 U.S. at 268 (reversing dismissal of habeas petition where petitioner alleged BIA failed to follow its own regulations). Because ICE did not follow its own regulations in re-detaining Carlos F., he is being held "in custody in violation of the . . . laws . . . of the United States," and habeas relief is warranted. 28 U.S.C. § 2241(c)(3).

---

⁶ As to the *D.V.D.* injunction and its procedural requirements regarding third-country removal, it is currently administratively stayed while the First Circuit considers entering a stay pending appeal. *D.V.D.*, No. 26-1212, Order of Court (1st Cir. Mar. 11, 2026). Officer Minner is awaiting resolution of the appeal process. (Minner Decl. ¶ 21) (noting plans to remove Petitioner "as soon as the injunction may be lifted").

### C. Remedy

As to the appropriate remedy, other courts, addressing similar facts, have ordered release. *See Yee*, 806 F. Supp. 3d at 903; *Sarail A.*, 803 F. Supp. 3d at 785; *Roble*, 803 F. Supp. 3d at 774; *see also Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025); *Phan v. Noem*, No. 25-cv-2422-RBM-MSB, 2025 WL 2898977, at *5 (S.D. Cal. Oct. 10, 2025). Moreover, here, Petitioner's unlawful detention has been unnecessarily prolonged by a series of missteps on the part of Respondents, including ICE's transfer of Petitioner to Texas, the Government's decision to file criminal charges in Minnesota after his transfer to Texas, Petitioner's transfer from ICE custody to criminal custody in Texas, Respondents' inability to confirm in whose custody Petitioner was detained, the Government's decision not to pursue criminal charges, the Government's representations that Carlos F. would be released from criminal custody and would not be subject to an immigration detainer, and Petitioner's detention in ICE custody immediately upon his release from criminal custody. The Court finds that release is the appropriate remedy here and orders the immediate release of Carlos F., subject to the conditions in his preexisting Order of Supervision.

### III. ORDER

In light of these changed circumstances, and based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Carlos F.'s Petition for Writ of Habeas Corpus [Doc. No. 1] is **GRANTED**.

2. Respondents are **ORDERED** to release Carlos F. from custody by no later than March 14, 2026, subject to and in accordance with the conditions in his preexisting Order of Supervision.

3. Prior to Petitioner's release, Respondents must first notify Petitioner's legal counsel, Nicholas Ratkowski (651-755-5150; nico@ratkowskilaw.com), within two hours of his impending release, and include the location of his release and approximate release time, so that Petitioner's counsel may make transportation arrangements and Petitioner's counsel may notify family members.

4. Upon release, Respondents shall return to Petitioner all of his identifying documents, immigration documents, paperwork of any kind, his cell phone, and any other personal belongings, including clothing and jewelry.

5. Respondents may not administratively recharacterize the release granted by this Order as grounds to impose additional conditions and may only impose the conditions of Carlos F.'s preexisting Order of Supervision.

6. No later than March 15, 2026, Respondents are **ORDERED** to provide notice on CM/ECF confirming that Carlos F. was released from custody consistent with this Order. The notice must include a copy of his conditions of release.

Dated: March 12, 2026

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge